## SUPREME COURT.

THE PEOPLE *ex rel.* SIDNEY P. NICHOLS agt. EDWARD COOPER, mayor, &c.

*New York (city of) — Removal of police commissioner — Mayor's power judicial — his judgment upon question of removing police commissioner subject to review by supreme court on certiorari — Accused officer's right to know what the specific charges against him are — Charges if not admitted must be proved — Right to cross-examine witnesses — Right to be represented by counsel.*

The mayor's power as to removal of a police commissioner *is judicial* and his judgment upon the question of removal is subject to review by this court on a *certiorari* ; the accused official has a right to know what the specific charges against him are ; such charges if not admitted must be proven, and the defendant should be permitted to cross-examine witnesses and to call witnesses in his own behalf, and in these and other respects to be represented by counsel.

If the return of the mayor to a writ of *certiorari* issued out of this court, to review his proceedings in making such removal, shows that in all or any of these particulars the relator in such proceeding was denied his rights, the mayor's proceedings must be reversed, and his decision declared to be null and void.

The return of the mayor to the writ of *certiorari*, in which is given all the proceedings had before him, on which a certificate of commissioner Nichols' removal from office was transmitted to the governor, is given in full in the opinion, and it is *held* :

That the relator did not have such a hearing before the mayor, as the twenty-fifth section of the charter entitled him to and, therefore, judgment should be rendered that the proceedings for the removal of the

The People *ex rel.* Nichols agt. Cooper.

relator be in all respects reversed and set aside, and that the relator be reinstated in the office of police commissioner. (*See, also, the Matter of Sidney P. Nichols*, 57 *How.*, 395 ; *The People ex rel. Nichols* agt. *Cooper, id.*, 463 ; *The People ex rel. Cooper*, agt. *Special Term at Chumbers, id.*, 647 ; *and The People ex rel. The Mayor* agt. *Nichols, ante.* 200.)

*Special Term, February,* 1880.

*John D. Townsend,* for relator.

*F. N. Bangs,* for respondent.

LAWRENCE, *J.* — On the day on which this cause was argued before me the court of appeals, on the appeal taken by this relator from an order of the general term of this department granting a writ of prohibition against the special term, rendered a decision reversing the order of the general term. The opinion of the court of appeals was concurred in, as is stated, by all the judges of the court, and it must be followed as decisive of the law of this case. In that opinion the court say "the relator was the mayor of the city, and its charter conferred upon him power to remove the defendant, but *only for cause, and after an opportunity to be heard*" (*Session Laws of* 1873, *chap.* 335, *sec.* 25).

" The power is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds, and then not until after notice to the person charged, for in no other way could he have an opportunity to be heard. The proceeding, therefore, must be instituted upon specific charges, sufficient in their nature to warrant removal, and these, unless admitted, be proven to be true. Defendant might also cross-examine the witnesses produced to support the charges, call others in his defense, *and in these and other respects be represented by counsel.* In no other way could the person sought to be removed have a due hearing or opportunity to be heard; and this condition must be complied with before the power of removal is exercised." After citing the cases which sustain this position the court proceed to say : " It follows, therefore,

that the proceeding is judicial in its character, and as a necessary consequence is subject to review by a writ of *certiorari* issued by the supreme court in the exercise of its superintending power over inferior tribunals and persons exercising judicial functions."

This definition of the power of the mayor, and of the nature of that power, will render it unnecessary for me to consider some of the questions which were so forcibly and thoroughly discussed by the learned counsel for the respective parties upon the hearing. The court of last resort has authoritatively declared that the mayor's power *is judicial ;* that his judgment upon the question of removing a police commissioner is subject to review by this court on a *certiorari*, and that the accused official has the right to know what the specific charges against him are ; that such charges, if not admitted, must be proven, and that the defendant should be permitted to cross-examine witnesses and to call witnesses in his own behalf, and in these and other respects to be represented by counsel. If the return of the mayor to the writ shows that in all or any of these particulars the relator in this proceeding was denied his rights it follows, necessarily, that the mayor's proceedings must be reversed and his decision declared to be null and void.

By the return of the mayor to the writ it appears that, on the 14th day of March, 1879, he addressed to the relator a written communication as follows :

> "MAYOR'S OFFICE,       ⎱
> "NEW YORK, *March* 14, 1879. ⎰

"*To* SIDNEY P. NICHOLS, *Police Commissioner of the City of New York :*

"SIR. — Under the board of police, of which you are a member, the government and discipline of the police force have become lax and incapable ; the police force has deteriorated in efficiency, and it has become demoralized.

"The board of police, of which you are a member, has not caused the streets of the city to be thoroughly cleaned from

time to time, and kept thoroughly cleaned, and has not removed from the city, daily, and as often as necessary, all ashes, dirt, rubbish and garbage.

" You have been negligent in the discharge of the public duties which you were bound to fulfill.

" You have allowed personal dissensions to preclude the proper exercise of the official trust which you assumed.

" Your conduct has been unbecoming your office.

" These causes warrant your removal from office.

" I will give you an opportunity to be heard thereon at twelve o'clock, noon, on Wednesday, March 19, 1879, at the mayor's office.

"EDWARD COOPER,

" *Mayor.*"

It is also stated that, at the time and place appointed, the relator appeared in person and accompanied by counsel, and that thereupon the following conversation or discussion took place :

" MAYOR'S OFFICE,
" NEW YORK, *March* 19, 1879.

" Mayor Cooper — I have addressed a letter to Gen. Smith, Mr. Erhardt and Mr. Nichols. Is Mr. Erhardt here ? Gen. Smith is here, I see, and Mr. Nichols is here. Mr. Nichols, did you receive my letter of March 14 ?

Commissioner Nichols — I did, sir.

Mayor Cooper — I now give you an opportunity to be heard in response to it, if you have any thing to say.

Commissioner Nichols — I ask you, sir, in my case, whether I can be permitted to be heard by counsel, who are here, Messrs. Vanderpoel and Townsend ?

Mayor Cooper — I will not hear counsel ; any thing you have to say I will hear. I will state here to all the gentlemen that after the proceedings are over if they have any desire to submit any papers, in writing or in print, they can be put in, say within twenty-four hours, or at any time to-morrow.

The People *ex rel.* Nichols agt. Cooper.

Commissioner Nichols — Will you permit me to speak through my counsel, Mr. Townsend, without argument?

Mayor Cooper — No.

Commissioner Nichols — If he acts as my agent only, will you permit him?

Mayor Cooper — No; but I will hear what you have to say.

Commissioner Nichols — What I have to state I have reduced to writing, and will read it, unless you will permit Mr. Townsend.

Mayor Cooper — I will not hear counsel read it.

Mr. Nichols — I protest against such action as being an outrage upon my rights in this court [reading]:

'To the Honorable EDWARD COOPER, *Mayor of the City of New York:*

'As one of the police commissioners of the city of New York, I appear in response to the communication from you, delivered to me on the fifteenth inst., citing me to appear before you on the 19th day of March, 1879, at 12 o'clock, noon — and in reference to the citation —

'*First.* I respectfully protest that the charter of the city secures to me a right to be heard before it is adjudged that there is cause for my removal, and that this right has been violated, in that you, as mayor, by the terms of the notice served on me, have stated your conclusions, and adjudged that they warrant my removal from office before an opportunity has been accorded me of such hearing as is provided for in the charter.

'*Second.* The paper or notice served upon me as containing charges against me, and being the only statement of charges received by me, is general, indefinite, and uncertain. It is impossible to understand from that paper, or notice, what specific acts or omissions are intended thereby. I therefore say, there is not given me a sufficient statement of charges, or matters alleged as cause for my removal, nor proper opportunity to hear the proofs, if any there may be thereon.

The People *ex rel.* Nichols agt. Cooper.

' *Third.* By further responding to said paper or notice, I do not intend to waive, but hereby expressly reserve the right to take and save all exceptions and objections to the uncertainty and insufficiency of said paper or notice as a statement of charges against me, and also to your honor's want of jurisdiction in the matter, and I only further respond in order that your honor may be apprised of the fact that I fully deny each and every conclusion therein declared or intimated, and that this may be explicit. I deny that under the board of police, of which I am a member, the government and discipline of the police force have become lax and incapable, or that the police force has deteriorated in efficiency, or that it has become demoralized. I deny that the board has, or that I, as a member thereof, have failed or omitted to do or perform any duty imposed upon me or it, by law, in respect to cleaning the streets or removing from the city, ashes, dirt, rubbish or garbage. On the other hand, I affirm that at all times since I have been such commissioner, all the moneys taken from the public treasury or allowed for street cleaning purposes have been properly and faithfully applied to such purposes; and the board has at all times discharged its whole duty in the premises. I deny that I have been negligent in the discharge of the public duties which I was bound to fulfill. I deny that I have allowed personal dissensions to preclude the proper exercise of the official trust which I assumed. I deny that my conduct has been unbecoming my office. I deny that I have done any act or omitted any duty which would warrant or justify your honor in removing me from the office of police commissioner.

'Respectfully submitted.

'SIDNEY P. NICHOLS.'

"Mayor Cooper — Mr. Nichols, as I have been around the city a good deal, I have observed the condition of the streets myself. I am prepared to state to you a good many places in the city where the streets have not been cleaned as required

by statute. Do you wish me to specify them to you — the particular places?

Commissioner Nichols — Are you prepared to be cross-examined?

Mayor Cooper — No, sir; I ask you whether you wish to have specifications of particular streets and places from which the dirt and rubbish has not been removed, as required by statute?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — You can be heard now, Mr. Nichols, if you like; I wish to ask you whether you are acquainted with the condition of the following streets on March twelfth, and a week prior?

Commissioner Nichols — I answer, if the mayor will furnish to me specifications of the charges that he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — I want an answer; do you know the condition in which Greenwich street, from Murray street to the Battery, was on the twelfth of March?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — Is that the only answer you have to make to my question?

(No response.)

Mayor Cooper — I ask, have you any answer to make to my question?

(No response.)

Mayor Cooper — Will you answer my question?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges that he holds, if any, against me,

and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — I have many other places that I am prepared to ask you about, for instance, I will ask you whether, merely as an illustration, and if you will answer this I shall ask you with respect to a good many others; I will take West Thirty-second street on the same date, are you acquainted with its condition?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges that he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — You decline to answer my question, I understand you, except as you have stated?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges that he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — Have you any thing else you wish to say in reply to my letter?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges that he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — If Mr. Nichols wishes to answer I am prepared to ask him questions in regard to the discharge of his duty, which will, I think, be sufficiently specific to give him an opportunity of answering specifically. I can ask you some questions now. Mr. Nichols, in 1877 were you informed by Mr. Erhardt, or by any reports that he caused to be furnished to the board of police or to the street cleaning bureau, that the men that were employed in the street cleaning bureau were idling away their time or inefficient?

(No response.)

Mayor Cooper — Have you any reply to make to my question, Mr. Nichols?

The People *ex rel.* Nichols agt. Cooper.

(No response.)

Mayor Cooper — Mr. Nichols, if you are not prepared to answer you can hand your answer in, I do not wish to wait any longer; you can hand in any answer you wish to make.

Mr. Vanderpoel — It is all ready, I think; Mr. Townsend will look it over first.

(Mr. Vanderpoel hands to Mr. Townsend a paper on which he, Mr. Vanderpoel, has been writing, and after reading it Mr. Townsend hands it to commissioner Nichols.)

Commissioner Nichols— I would ask if that was for commissioner Erhardt's case or for my own?

Mayor Cooper — It is for your own case.

Commissioner Nichols [reading from the paper last referred to]— I am and have, at all times, been ready and willing to give the mayor full information upon every subject connected with the police department or its operations, but it is not proper for me, in a proceeding in which I am denied the right of counsel and have not been furnished with any charges or specifications, to make answers which would seem to recognize in any way the regularity of the proceedings against me.

Mayor Cooper — That is the only answer you have to make to the question?

(No response.)

Mayor Cooper — Mr. Nichols, if you have any information, or any thing to say in respect to the causes which I have stated here, I am prepared now to go into the matter with you in detail.

Commissioner Nichols — If the mayor will furnish to me specifications of the charges, if any, he holds against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — That is all you have to say now in reply to any questions that I may put to you; do you decline to give any other answer?

(No response.)

Mayor Cooper — Have you any thing else to say?

Commissioner Nichols — I desire to be heard by counsel.

Mayor Cooper — I say now to Mr. Nichols, in regard to these charges, especially in regard to the street cleaning, of which — he is the chairman of the committee which has special charge of it in the board of police, as I understand — if he has any thing to say at all in respect to either the fact that the streets have not been thoroughly cleaned, as required by statute, or any thing to say in explanation or excuse of its not being done so, I am prepared to hear it.

Commissioner Nichols — I am, and have at all times been ready and willing to give the mayor full information upon every subject connected with the police department or its operations, but it is improper for me in a proceeding in which I am denied the right of counsel, and have not been furnished with any charges or specifications, to make answers which would seem to recognize in any way the proceedings against me.

Mayor Cooper — Mr. Nichols, do I understand you to admit or deny the fact that the streets have not been thoroughly cleaned from time to time, and kept well cleaned as required by statute? I simply wish to know whether you admit or deny that statement.

Commissioner Nichols — I have set forth an answer to that in the paper which I have handed you. If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — Is that all the answer you make?

Commissioner Nichols — My answer to that last question is as follows contained in my letter to you: "I deny that the board has, or that I as a member thereof, have failed or omitted to do or perform any duty imposed upon me or it by law in respect to cleaning the streets or removing from the city ashes, dirt, rubbish or garbage. On the other hand, I affirm that at all times since I have been such commissioner all the moneys taken from the public treasury or allowed for street

The People *ex rel.* Nichols agt. Cooper.

cleaning purposes have been properly and faithfully applied to such purposes, and the board has at all times discharged its whole duty in the premises."

Mayor Cooper — I understand you to say, then, that they have been properly cleaned, is that so?

(No response.)

Mayor Cooper — Have you any answer to make to that question?

(No response.)

Mayor Cooper — Have you any thing to say Mr. Nichols?

(No response.)

Mayor Cooper — Does Mr. Nichols mean to answer my question, or not?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — Is that the only answer?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — Mr. Nichols, I don't wish to misunderstand your answer here, but I do not understand you to take any ground as to the fact whether the streets have been thoroughly cleaned as required by statute or not; I wish a positive answer one way or the other.

Commissioner Nichols — I am, and have at all times, been ready and willing to give the mayor full information upon every subject connected with the police department or its operations, but it is improper for me, in a proceeding in which I am denied the right of counsel and have not been furnished with any charges or specifications, to make answers which would seem to recognize in any way the proceedings against me.

Mayor Cooper — Mr. Nichols, I know of my own know-

ledge specific cases to which I will call your attention; if, in respect to them, you desire to make any other answer, I will have it taken down; I understand you decline to give me answers to the cases I present to you now; I will begin again with the memorandum that I have of the places where I have been myself; I will take Greenwich street, and Washington street below Morris street, and Mulberry street, and, in regard to them, do you claim that they have been properly cleaned? I do not go over all that I have here; that is merely an illustration; I have very many other instances that I am prepared to state to you.

(Commissioner Nichols here consulted with his counsel.)

Mayor Cooper — I am waiting; is Mr. Nichols preparing an answer?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — That is the only answer you have to make, I understand?

(No response.)

Mayor Cooper — Mr. Nichols, have you any thing that you wish to say further in regard to the matter of street cleaning as a reason why the streets have not been kept clean?

Commissioner Nichols — If the mayor will furnish to me specifications of the charges he holds, if any, against me, and will allow me reasonable time to reply to the same, I desire to be heard.

Mayor Cooper — If Mr. Nichols desires to submit any views or any thing in writing I will receive it within the next twenty-four hours; he may prepare it or have his counsel prepare it for him, or any other way he pleases; has Mr. Nichols any thing more he wishes to say?

Commissioner Nichols (after consultation with his counsel) — A letter from the Hon. Samuel J. Tilden.

"ALBANY, EXECUTIVE CHAMBER,  
*February* 17, 1875.

"To the Hon. WILLIAM H. WICKHAM, *Mayor :*

" Your messenger delivered to me the papers in the removal cases of February fourth "——

Mayor Cooper — Mr. Nichols, if you have any thing to say I will hear it; if you have any thing written you may submit it.

Commissioner Nichols — This is in response.

Mayor Cooper — I will not hear any thing read. If it is submitted to me in writing or in print I will hear it. Have you any thing further you wish to say ?

(Commissioner Nichols again commenced to read the letter.)

Mr. Vanderpoel (to Mr. Nichols) — He says he will not hear any thing more.

Mayor Cooper — I will hear any thing you are pleased to say, or any thing in writing or in print you please to submit.

Commissioner Nichols — I desire to read this letter.

Mayor Cooper — Go on ; read it through, if you like.

(Commissioner Nichols here consults with his counsel.)

Commissioner Nichols — Instead of reading this, your honor, at present, after consultation with my counsel, I accept of your offer for the next twenty-four hours, to submit some papers. I will see what I will do, and submit any thing that I have.

Mayor Cooper — You have nothing more that you wish to say now ?

(No response.)

Mayor Cooper — I am waiting for an answer.

Commissioner Nichols — Not under the intimation that I have, that I cannot be heard by counsel.

Mayor Cooper — I understand Mr. Nichols has nothing more he wishes to say at present ; is that so ?

(No response.)

Mayor Cooper — I understand there is nothing more that Mr. Nichols wishes to say ; but he may hand in any paper he

pleases in the course of the next twenty-four hours.    The matter is closed as to Mr. Nichols."

From this it appears that although the relator was attended by his counsel, upon a direct request by him, that he should be permitted to speak through his counsel, Mr. Townsend, he was denied that right.   The charges, too, which are contained in the communication of March 14, 1879, are of a general nature, and no *distinct specification* is made of the streets, which were not properly cleaned; of the particulars of the alleged negligence of the relator in the discharge of his duties; of the personal dissensions which precluded the relator from the proper exercise of the official trust which he had assumed; nor of the alleged conduct of the relator which was deemed by the mayor to be unbecoming the office of a police commissioner.   The charges, even if they can be regarded as sufficiently specific, to warrant the mayor in making them the basis of a proceeding for the removal of the relator, should, in the language of the court of appeals in their opinion, " unless admitted, have *been proven to be true.*"   The charges were most emphatically denied by the relator, as is shown by the extracts from the return which are set forth above, and not a single witness was called in their support.   The mayor did, it is true, after repeated requests on the part of the relator that he should be furnished with specifications of the charges against him, put this question to the relator :  " Do you know the condition in which Greenwich street, from Murray street to the Battery was, on the twelfth of March ? " and also stated, " I have many other places that I am prepared to ask you about, for instance, I will ask you whether, merely as an illustration, and if you answer this I will ask you with respect to a good many others, I will take West Thirty-second street, on the same date, are you acquainted with its condition ? "

To these questions the relator replied :  " If the mayor will furnish to me specifications of the charges that he holds, if any, against me, and will allow me a reasonable time to reply to the same, I desire to be heard."   The relator not having

admitted the charges was entitled to have them proven. It was not his duty to make an admission which would relieve the mayor from making that proof which the charter required.

He could not be compelled, by means of the interrogatories addressed to him, to shift the burden of proof so that instead of being proven to be guilty he would be obliged to prove his innocence. Again, the return shows that the mayor was acting either on his own knowledge of the condition of the streets, to which he referred, or on information which he had derived from other parties.

If he acted upon the information given to him by others, under the provisions of the charter as construed by the court of appeals, the relator was entitled to be confronted with his accusers and to cross-examine them, and if the mayor is to be regarded as acting on the statements which he made upon his own knowledge, he stood in the proceeding as a witness, and as such witness was subject to cross-examination.

To the distinct question put to him by the relator whether he was prepared to be cross-examined, the mayor replied in the negative.

Under this state of facts it is difficult to see how it can be claimed that the relator had an opportunity to be heard within the meaning of the provisions of the charter under which the proceedings for his removal were instituted.

It further appears by the return that, after the proceedings which took place on the 19th of March, 1879, and on the 3d of April, 1879, the mayor addressed a written communication to the relator, in which he stated that, before taking final action in the matter, he was willing, lest there may have been a misapprehension on the relator's part, to afford him a further opportunity for answer, explanation or excuse, and notified him that such opportunity would be given at the mayor's office, at 11 o'clock in the forenoon of Saturday, the fifth of April, and that he would also then receive from the relator any statement, explanation or argument in writing; but, that,

in the absence of further answer or explanation upon the statement of the cause heretofore made by him to the relator, if the record should remain unchanged, the same with a certificate of the relator's removal from the office of police commissioner would be transmitted to the governor for his approval. It will be observed, from this communication, that the mayor had, on the proceedings already taken before him, determined to remove the relator.   That proceeding afforded no ground for the relator's removal, for the reasons above stated, and yet, unless the relator could excuse himself, he was notified that, on the record thus made, if the record remained, unchanged a certificate of his removal from office would be transmitted to the governor.

This was again calling upon the relator to prove himself innocent of charges of which he had not been proven to be guilty, and, again, shifting the burden of proof from the accuser to the accused.

To this communication the relator replied, renewing all protests theretofore made, and distinctly inquiring whether :

*First.* " Will specifications of the charges of my removal be furnished me ? "

*Second.* " Will witnesses be produced to sustain the causes of my removal, and shall I be permitted to be present when they testify and examine them ? "

*Third.* " Will I be permitted to introduce evidence to refute the charges made against me ? "

*Fourth.* " Shall I be allowed the assistance of counsel upon this hearing ? "

Upon that day, no further proceedings having taken place before the mayor and so far as appears by the return, no answer having been made by the mayor to the relator's inquiries, the mayor transmitted a certificate of the relator's removal from office to the governor.   I am of the opinion that this record so far from showing that the relator was afforded an opportunity of being heard, as provided by the charter, distinctly shows that such opportunity was denied to him, and

unless, therefore, the writ should be dismissed or quashed for the reasons stated by the learned counsel for the mayor, judgment should be rendered that the proceedings be reversed.

One of the grounds taken by counsel on the argument was, that the writ recites no grievance capable of redress, inasmuch as the mayor's removal is initiate, inchoate and ineffectual without the approval of the governor.

Upon an examination of the points submitted by the mayor's counsel, on the argument of the appeal, in the prohibition case in the court of appeals, I find that the same proposition was there advanced, and as that court after argument held that the mayor's action was subject to review by *certiorari*, I must regard that point as having been decided in the present relator's favor. It was also contended by counsel, that after the mayor had transmitted the record to the governor, as a basis for the exercise of the latter's power of approval, the whole case was *res nova*, with the governor and that the presumption must be that the governor would commit no errors of his own, and would correct those of the mayor.

This point was in substance also taken before the court of appeals, and their decision that the mayor's action was subject to review by *certiorari*, is the answer to it. But it is argued that as the record had gone from the mayor to the governor, the court cannot, on *certiorari*, recall the physical act of the mayor in sending the papers to the governor, and the case of *The People* agt. *Reddy* (43 *Barb.* 539), among others, is cited as conclusive on this point. The opinion of the court of appeals in the prohibition case, is also an answer to this position. The point was taken and the case was cited in the court of appeals, and it must be concluded that the question was disposed of adversely to the respondent, for the reason that it cannot be assumed that the court would have held that the writ of *certiorari* should be heard, when it was apparent on the papers before the court, that such hearing must necessarily be of no avail, as the record, which it was sought by the writ to review, could not be brought before this court. Besides I

can find nothing in the twenty-fifth section of the charter which requires the mayor to transmit to the governor the *record of the proceedings before him.* The charter provides that " the mayor shall in all cases communicate to the governor in writing his reasons for such removal." This does not call for a transmission of the original record to the governor, and· if the proceedings before the mayor were not in accordance with the charter, his judgment, if erroneous, ought not to be allowed to stand, because he has put it out of his power to return the original record before him, particularly when, as in this case, he certifies that he has returned to the court that which he believes to be a true and correct transcript of the papers or record transmitted by him to the governor. Counsel also contended that the relator was guilty of *laches,* in not obtaining a writ of *certiorari* until August, 1879, being a period of four months after the date of his removal by the mayor and alleges that the court cannot, on this proceeding, go beyond the writ for the purpose of ascertaining that it was applied for as early as June, although not issued until August. Conceding that to be so, I am not prepared to hold that the lapse of four months between the date of his removal· and the obtaining of the writ of *certiorari* would constitute *laches* on the part of the relator. Lastly, with the opinion of the court of appeals so often referred to before me, I cannot avoid the conclusion that the relator did not have such a hearing before the mayor, as the twenty-fifth section of the charter entitled him to, and, therefore, judgment should be rendered that the proceedings for the removal of the relator be in all respects reversed and set aside, and that the relator be reinstated in the office of police commissioner.

Judgment accordingly.